UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NORA L. MIHELICK,

    Plaintiff,

v.                                        Case No:  2:16-cv-741-FtM-38MRM

UNITED STATES OF AMERICA,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 47) filed on June 30, 2017.  Plaintiff filed a Response in Opposition (Doc. 53) on July 28, 2017.  For the reasons set forth below, the Motion is granted.

## **BACKGROUND**

This case involves the 2009 tax liability of Plaintiff Nora L. Mihelick (Plaintiff or Mihelick).  In 2012, Mihelick submitted an amended 2009 income tax return to the Internal Revenue Service ("IRS"), stating she is entitled to deduct $300,000 of her income for 2009 due to a payment she made to her ex-husband that year stemming from a settlement of liability that arose during their marriage.  The deduction would result in a refund of $111,802 to Mihelick.  The IRS denied the refund, resulting in this lawsuit wherein Plaintiff

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

brings one claim for a tax refund under Sections 1341 of the Internal Revenue Code ("IRC"), 26 U.S.C. §§ 1341. (Doc. 1).

**UNDISPUTED MATERIAL FACTS**

Nora Mihelick and Michael Bluso were married in 1978. During their marriage both worked for Gotham Staple Co. (Gotham), which was founded by Bluso's father and owned by the Bluso family. Eventually Bluso became Gotham's CEO and majority shareholder, drawing a salary of approximately $1,000,000 a year. Mihelick held limited roles within the company, drawing a significantly lower salary. While married, the couple filed joint tax returns.

On September 3, 2004, Plaintiff filed for divorce. While the divorce was pending, Pamela Bluso Barnes, who is Bluso's sister and a minority shareholder in Gotham, sued Bluso, Gotham, and others, alleging, among other things, that Bluso was excessively compensating himself from 1999 to 2004 and therefore wrongfully depleting company assets (the "Barnes Litigation"). Mihelick was not a party to the Barnes litigation, but Bluso desired that Plaintiff pay half of any liability he might incur in the Barnes litigation that came from marital assets. (Doc. 47-11 at 11:6-25; 24:16-25, 28:1-15; Doc. 47-3 at 12:12-14:23, 36:13-14). Therefore, the divorce decree incorporated a Separation Agreement (Doc. 47-12), containing Article 5 pertinent here, which states in relevant part:

> **ARTICLE 5. PAMELA BLUSO CLAIMS**
> . . . .
>
> The Husband and Wife agree that the Barnes Litigation may result in the establishment of liability against one or both. The Husband and Wife agree that said liability, if any, that arose all or in part from the acquisition of marital assets, and which assets have been equally divided herein between the parties, shall be deemed to be a marital liability. The Husband and Wife further agree that they will be jointly and severally liable for all damages, costs, attorney fees and other expenses incurred in this litigation by Michael

> D. Bluso, Jr., … which is a marital liability. The Husband and Wife further agree that the amount of damages, costs, attorney fees and other expenses, if any, are not ascertainable at this time. The Husband and Wife further agree that they shall mutually agree to the allocation of the payment of any litigation costs.
>
> . . . .
>
> The provisions set forth herein regarding the Barnes Litigation shall not be construed as an admission of any liability by either the Wife or Husband or waiver of defenses in connection with the Barnes Litigation, but are only intended to resolve the issue between Husband and Wife regarding this potential liability that arose during the marriage.

(Doc. 47-11, pp. 6-7). While Plaintiff states she had no choice but to accept Article 5, she concedes that she ultimately had to give permission to her divorce attorney to keep Article 5 in the Separation Agreement; but she states she fought it and did not want it in the agreement. (Doc. 47-11 at 11:16-19, 13:8-11).

The divorce was final on August 31, 2005 after the parties executed the Separation Agreement, but the Barnes Litigation remained ongoing until settling in 2007. (Doc. 47-13). Under the Barnes Litigation settlement, Bluso paid Barnes $600,000 for her excess compensation claims. (*Id.* at ¶ 4; Doc. 47-3 at 38:1-22). In 2009, Plaintiff paid her ex-husband $300,000, which was half of the Barnes Litigation settlement amount, under Article 5 of their divorce agreement.[2] At the conclusion of her deposition testimony and in response to the question, "And do you feel any payment you ended up making was voluntary or involuntary?, Plaintiff answered, "I don't know. An obligation is an obligation." (Doc. 47-11 at 55:8-10).

---

[2] In 2005, Bluso made a $150,000 offer to indemnify Plaintiff for the Barnes Litigation, which Plaintiff rejected because she believed the case did not have any merit. (Doc. 47-11 at 12:7-13:5; Doc. 47-2 at 13:20-14:16, 15:8-19).

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely in dispute "if the [record] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* When deciding a motion for summary judgment, the court views all evidence and draws all reasonable inferences in the non-moving party's favor. *See Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003) (citation omitted).

The moving party bears the initial burden of showing there are no genuine disputes of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). This burden is satisfied by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party [must] go beyond the pleadings and by h[is] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted). The non-moving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 584-86 (1986) (stating the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

Moreover, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Walker v. Yamaha Motor Co., Ltd.*, No.6:13-cv-1546-ORL-37GJK, 2016 WL 7325518, at *11 (M.D. Fla. Feb. 16, 2016) (stating "[a]s to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the nonmoving party's case; or (2) the movant may provide affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial" (internal quotations and citations omitted)). This makes sense because "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

## DISCUSSION

Plaintiff claims she is entitled to deduct the $300,000 payment under Section 1341 of the IRC, resulting in an $111,802 refund.[3] 26 U.S.C. § 1341(a). Defendant argues, however, that the payment is not a taxable event that generates a deduction in the first instance, and there is no substantial nexus between the right to the income at the time of the receipt and the circumstances necessitating its return. Defendant further asserts that

---

[3] Specifically, Plaintiff claims that she paid $111,802 in federal income tax for 1999-2004 on her $300,000 share of $600,000 in income with her ex-husband due to their filing of joint tax returns. *See United States v. Skelly Oil Co.*, 394 U.S. 678, 682 (1969) ("Whenever s 1341(a)(5) applies, taxes for the current year are to be reduced by the amount taxes were increased in the year or years of receipt because the disputed items were included in gross income.").

Plaintiff's claim fails because the return of the income was voluntary and a taxpayer is not entitled to use Section 1341 for amounts voluntarily repaid.

To qualify for favorable treatment under section 1341 (often called the "claim-of-right doctrine"), a taxpayer must establish three elements: (1) that an item was included in the taxpayer's gross income in a prior year because it appeared that the taxpayer had an unrestricted right to the item in the prior year; (2) that after the close of the prior year it is established that the taxpayer did not have an unrestricted right to such item; and (3) that the taxpayer is entitled to a deduction (in excess of $3,000) under another section of the Internal Revenue Code for the loss resulting from the payment of the item to another in the current tax year. 26 U.S.C. § 1341(a); *Batchelor-Robjohns v. United States*, 788 F.3d 1280, 1293-94 (11th Cir. 2015). The dispute here is whether Plaintiff can establish the final two elements. "In addition to these statutory requirements, a taxpayer must demonstrate a 'substantive nexus between the right to the income at the time of receipt and the subsequent circumstances necessitating a refund.'" *Batchelor-Robjohns*, 788 F.3d at 1293 (quoting *Steffen v. United States*, 349 B.R. 734, 738 (M.D. Fla. 2005)). "The taxpayer's return of the income must not be the result of the taxpayer's purely voluntary choice; rather, it must be 'established,' for example, by a court, that the taxpayer did not have an unrestricted right to the income." *Id.*

The Eleventh Circuit has determined that "Section 1341 does not, by itself, create an independent tax deduction and instead applies 'only if another code section would provide a deduction for the item in the current year.'" *Batchelor-Robjohns*, 788 F.3d at 1294 (quoting *Fla. Progress Corp. v. Comm'r*, 348 F.3d 954, 957 (11th Cir. 2003)); *see also Alcoa, Inc. v. United States*, 509 F.3d 173, 178 n.4 (3d Cir. 2007) ("[I]t is a

prerequisite for section 1341 treatment that the taxpayer be entitled to a deduction for all or part of the repaid amount under some other Code section."). In so reasoning, the Eleventh Circuit stated:

> Subsection (a) of § 1341 provides that "*if*" three requirements are met, "*then*" the taxpayer is entitled to preferential treatment under [§ 1341]. 26 U.S.C. § 1341(a) (emphasis added). One of those requirements is that "a deduction" be "allowable for the taxable year because it was established after the close of such prior taxable year ... that the taxpayer did not have an unrestricted right to such item...." 26 U.S.C. § 1341(a)(2). The provision itself does not indicate whether a deduction should be allowable. That answer must be found in another provision of the code.... The regulations interpreting this provision confirm this conclusion.

*Fla. Progress*, 348 F.3d at 958-59 (emphasis in original). The Court agrees with the Government it must first determine whether "another code section would provide a deduction for the item in the current year." *Id.* at 963. The taxpayer bears the burden of proving the right to the amount of any claimed deduction. *New Colonial Ice v. Helvering*, 292 U.S. 435 (1934).

Here, Plaintiff contends that she should be entitled to deduct the $300,000 payment as a loss incurred in a transaction entered into for profit under Section 165(c)(2) of the IRC, which permits individual taxpayers to deduct "losses incurred in any transaction entered into for profit, though not connected with a trade or business." 26 U.S.C. § 165(c)(2). The analysis of the for-profit test focuses on the subjective intent of the taxpayer as the taxpayer's primary motive must be one of profit. *Kirchman v. C.I.R.*, 862 F.2d 1486, 1492 (11th Cir. 1989) (noting that the courts evaluate whether a taxpayer entered the transactions "primarily for profit"). In her argument, Plaintiff states that the repayment of income from prior years is clearly a loss and she entered into the transaction to repay past income to be released from further liability, citing *Nathel v. Comm'r*, 615

7

F.3d 83 (2d Cir. 2010), which recognized that "[i]n general, a negotiated payment to secure a release from conditional liability under a loan guarantee is deductible as a loss incurred in a transaction entered into for profit." *Id.* at 94. (Doc. 53, Sec. E). Plaintiff likens the payment to a return of income to its proper owner. The Court finds that the payment does not qualify as a deduction under Section 165(c)(2).

Here, Plaintiff paid Bluso under a private settlement agreement and did not make the payment because of any personal obligation resulting from the Barnes Litigation. In addition, the loss has nothing to do with a business venture or investment and Plaintiff fails to identify either a trade or business in which she engaged, or a for-profit transaction through which she incurred a loss. Plaintiff was not carrying on a trade or business when she incurred the loss. Rather, Plaintiff is attempting to deduct a repayment of the excessive compensation Bluso received from Gotham and returned to Barnes to settle the Barnes Litigation. This is not a "loss" or transaction entered into for profit contemplated by Section 165(c)(2). Plaintiff has pointed to no evidence she entered into the Settlement Agreement with a profit motive or economic advantage; rather it was a bargain entered into by the parties as one part of the divorce settlement, the payment of which was characterized as fulfilling an obligation under the divorce decree based upon Plaintiff's own testimony. Furthermore, Plaintiff has otherwise pointed to no other provision of the IRC under which the payment would be deductible.

Therefore, the Court finds there is no genuine issue of material fact as to whether the loss qualifies as a deduction under the IRC in the first instance, *Batchelor-Robjohns, 788 F.3d at 1294*; accordingly, the Court does not reach the issue of whether Plaintiff had an unrestricted right to the item of income under Section 1341(a).

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. 47) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 10th day of October, 2017.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record